## CIRCUIT COURT OF THE CITY OF RICHMOND

William T. Puryear, Jr., et al.

v.

Tanfoglio Compania, S. p A., et al.

March 28, 1990

Case No. LM-3282-1

By JUDGE MELVIN R. HUGHES, JR.

This case is a products liability action for personal injury damages brought by an infant (William) through parents as next friends and by the parents individually against an Italian manufacturer of a handgun and its successors and the retailer of the gun and its successors. After filing this case, plaintiff took a nonsuit as to a Florida company alleged to be the importer of the handgun.

The retailer and its successor have filed a demurrer to the Motion for Judgment, and under well known principles, the outcome will be decided on the facts pleaded according to their legal sufficiency. *The Ryland Group v. Wills*, 229 Va. 459, 461 (1985). On August 17, 1985, William and his family visited the Walters family home with Scott, William's thirteen year old cousin. While both families were in the living room, Scott picked up a .22 caliber handgun lodged in the seat of a couch. Thinking the gun was a toy, Scott pulled the trigger discharging a bullet striking the plaintiff in the head causing severe injuries, including brain damage. Count I of the motion for judgment alleges negligence against the manufacturer in the gun's design, manufacture, export, distribution, and in failure to warn because the gun had an "unreasonably dangerous condition . . . due to the absence of a safety catch me-

chanism . . . ." In Count II plaintiff alleges negligence against the manufacturer and retailer in placing a defective product without a safety mechanism for sale and in failure to warn, test, and inspect. In Counts III and IV, both captioned "Products Liability," the motion for judgment alleges the manufacturer and retailer placed the firearm into the stream of commerce in an unreasonably dangerous condition which caused plaintiff injury. In the remaining four counts, plaintiff alleges breaches of express warranty, implied warranty for a particular purpose, and implied warranty of merchantability against both the manufacturer and retailer. Because the Court concludes that plaintiff cannot plead the handgun was unreasonably dangerous or defective under the facts as a matter of law, the demurrer is sustained without leave to amend.

In the first two counts, plaintiff states essentially a strict liability theory of recovery because it predicates liability on the firearm being in the "dangerous condition . . ." because it lacked a safety mechanism. This approach has no support in Virginia by legislation or court ruling. While plaintiff argues his claim is based on goods "unreasonably dangerous" and the case should proceed to determining the merits according to *Logan v. Montgomery Ward*, 216 Va. 425 (1975), on examination, *Logan* provides only negligence and breach of warranty as claims for product liability under a standard of ordinary or foreseeable use. In *Logan*, the plaintiff purchased a gas stove from Montgomery Ward, had it installed by a third party, and on the first use of the oven, there was an explosion injuring plaintiff. The Court said:

> The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence. The product must be fit for the ordinary purposes for which it is to be used. There was an implied warranty of merchantability that the stove was reasonably safe for its intended use. Under either the warranty theory or the negligence theory, the plaintiff must show (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put

or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands. (Citations omitted).

Nor on these facts does the motion for judgment state a case of negligence, breach of warranty, or failure to warn because instead of showing a defect, the allegations support the firearm performing exactly as it was expected and intended to perform: when the trigger was pulled, the firing mechanism caused the weapon to discharge a bullet albeit with regrettable consequences. *Rhodes v. R. G. Industries, Inc.*, 173 Ga. App. 51, 325 So. 2d 465 (1945). The fact of firing shows fitness for the use intended, not a defect. Indeed, had it misfired, it would then prove itself defective. Plaintiff cannot mount claims of an unreasonably dangerous product because the use here is entirely within the use ordinarily made of the product, to discharge a bullet when the trigger is pressed.

There is also no case for failure to warn. An instrumentality which is self-evidently dangerous when used in the manner for which it was designed requires no warning from the seller to the consumer if the instrumentality is not defectively designed or manufactured. *Taylor v. Gerry's Ridgewood, Inc.*, 95 Ill. App. 85, 90, 490 N.E.2d 987, 991 (1986). The propensity of a loaded firearm to injure severely or kill is open and obvious. The absence of a safety mechanism did not cause the injury, the intentional pull of the trigger did.

Accordingly, the demurrer of Watkins-Cottrell is sustained without leave to amend. Brown-Rogers-Dixon's demurrer (the successor) is also sustained without leave to amend for the same reasons stated therein.